Our last case for argument, United States v. Wagner, Mr. Sandberg. Good morning, and may it please the Court. This appeal was on some very limited issues. The defendant was convicted of use of means of interstate commerce to entice a minor to engage in sexual activity. There were three points that were raised in the opening brief. One of them involved whether or not the Court miscalculated the guideline range by grouping offenses. One was an uncharged, unconvicted offense. The other issue that was raised was related to the supervised release conditions. And the third one, which was not objected to, was just seeking clarification from this Court. There was an order that was entered saying that it didn't have jurisdiction to consider what was ostensibly an ineffective assistance of counsel argument, because he hadn't yet been sentenced and wasn't in custody, and because there was the final order. Can you speak up a little? Sure, Judge. Absolutely. We just want a statement from the Court being clear that he has not raised that, so that that will be available to him as a 2255 at a later time. If I can go to the first argument, it is our contention that it was improper for the Court to group for purposes of 2G1.3. Well, you discussed Newsom for the proposition that the offense level should not have been elevated as a result of the uncharged conduct. But Newsom is based on conduct that was grouped. But here we are looking at conduct that, according to the guidelines, can't be grouped, right? I'm sorry. Say that one more time. We're looking at guidelines that can't be grouped here.  And so the proper offense level would have been the 30 and not the 32. What we're talking about is a final sentence result, because we've got a statutory minimum of 10 years, that would be 120. And the upper end of that properly calculated guidelines would be 121. It would effectively save him about a year of his time. But there wasn't any evidence in the course of the trial regarding the facts associated with the person who we'll call Heather. That's what he was called. And we know that the offense that he was charged with, count one of a single count complaint, was related to Jen. And we know that also by going back to the record and looking to the first criminal complaint where the affidavit is attached, and it's only related to Jen. You made an odd statement in your summary of argument. While Wagner did not object to sentencing, this higher guideline range resulted in a reasonable probability of a different outcome, namely a lower sentence. Why would a higher guideline range produce a lower sentence? That is an error in either how I said it. So you meant a higher sentence. He had a higher sentence than what we believe he should have. We believe the guideline range would have put the upper end at 121, statutory minimum of 10 years. So it would have been either a 120 or 121 month. There is no discussion at all during the entire course of the sentencing hearing discussing this individual, Heather. Did he say he was imposing a guideline sentence, the judge? Off the top of my head, Your Honor, I'm not sure whether or not that's specifically what he said, but that was within the guideline range. Didn't he say he was adopting the PSR, though? Correct. Right. And that laid it out. So I guess what I'm trying to understand, because I didn't quite understand your answer when I asked you about Newsom and the fact that Newsom was based on group conduct. And here we're looking at conduct that can't be grouped. Are you arguing that uncharged conduct beginning before and then temporarily overlapping with the charged offense can never be included in the charged offense for purposes of increasing the offense level? Not exactly. My argument here is it relates to the conduct using the terms under the guidelines for relevant in offense. I'm not sure that the actions as it relates to Heather during the period of the indictment is the type of conduct that, for purpose of 2G1.3, can constitute another group for purpose of the enhancement. Why not? Because I'm not sure that, I don't agree that by definition of offense and relevant conduct that the actions that took place during that period of time related to Heather fall within that definition of the guidelines. And as to the supervised release conditions, because the court didn't set out a basis or a reason for talking about so broadly stating what the terms as it relates to adult pornography and websites and stuff like that, we think it's inappropriate for the court to have reached that conclusion. Certainly if it were to be remanded, Judge Shannon could say something differently and could expand upon that and connect it, but there isn't any evidence in the sentencing record where there is a connection regarding that. Unless there's any other questions with the court, I will sit down. Thank you. Okay, thank you. Thank you, Mr. Sandberg. Mr. Walters. Good morning again, Your Honor, or good morning again, Your Honors. Greg Walters on behalf of the United States. We'll start by addressing the guideline issue, and Judge Williams, what I think in talking about Newsom is they set out, this court in Newsom set out the general rule, which we agree with, that generally uncharged conduct cannot constitute a separate group under the guidelines. And that was the argument on which the defendant relied in his opening brief, but the general rule is not applicable in this case because we're dealing with a specific guideline that states otherwise, and that is 2G1.3, subsection D, and then the commentary that goes along with that, that does allow uncharged conduct to constitute a separate group under the Chapter 3 if that uncharged conduct is relevant conduct to the offense of conviction. And that's the argument that we ended up addressing, very specific to 2G1.3 in our brief, that because of the temporal overlap, which temporal overlap is not always sufficient in and of itself, but because of the temporal overlap and both offenses being the same, the uncharged offense and the charged offense, that the district court did not plainly err in having two different groups. And that's the standard of review that we're here today, under plain error. And absent that objection below, you have the offense, uncharged offense, involving Holly, the charge of conviction involving Jen. And why would you have to worry about sticking it in the guideline range, right? The judge doesn't have to give a guideline sentence. And if you have this relevant conduct, you could just tell the judge, you know, you ought to sentence him to X because there's this additional conduct he engaged in. Are you asking why the government recommended a guideline sentence, Sean, or is that? Yeah, why would you need to? Why wouldn't it just be something to tell that the judge has to make an independent judgment of the sentence to impose? He can't rely blindly on the guidelines. So any point you could make to add to his guideline sentence, couldn't you just ask the judge to consider and give him a sentence? Well, I think the, if I may, I think it's somewhat of a two-part question because the judge still has to, as the court is aware, I'm not telling you anything you don't know, but the court has to properly calculate the guideline range. And I believe, at least in this case, that the properly calculated guideline range required two different groups. Why is the offense conduct involving this fictional victim, Holly, relevant conduct to the offense of conviction, which had to do with his enticement of the fictional undercover officer who was posing as Jen? Well, our argument is twofold with regard to that. First, respectfully, we think the defense started with the incorrect argument by just looking at Newsom's general rule. Right, I understand that. But your affirmative argument, why is this relevant conduct? What part of the definition? It just has to do with the definition under 1B1.3A1 that if it occurred during the commission of the offense of conviction, that is one of the prongs of relevant conduct under subsection A1. And our argument would be that the attempt with respect to Holly, if we look at that across a spectrum, with the last act being January 21, 2015, I may have my years wrong, but January 21, whereas he first responded to Jen's ad back on January 13. And so there is at least a partial temporal overlap, because I think that's the term Judge Williams may have used when asking a question before. So it's because of the temporal overlap. What part of the definition are you referring to? Of relevant conduct, Your Honor? Yes. All acts, omissions committed by the defendant that occurred during the commission of the offense of conviction. Well, the second half of that, that occurred during the commission of the offense of conviction, looks like it's part of the jointly undertaken criminal activity subsection. No, Your Honor. This court has stated that that last phrase applies both to if it's jointly undertaken or individually undertaken, that that last phrase modifies both subparts of the statement. And that hanging paragraph applies to both subsections, both individual activity and jointly undertaken activity. Yes, Your Honor. Okay. Doesn't the probation service always calculate the guidelines range? They do, Your Honor. Did you ask do they always do that? No. Yes. So why does the government bother? I mean, I take it it was your idea that this conduct ought to be considered relevant conduct? No. For purposes of guideline? No. We are not. This went to trial. There was no negotiation. We are not involved in calculating the guideline level prior to our receiving the initial pre-sentence report from probation, which we then look at and state whether we have an objection or not to whether we believe it's properly calculated. So probation had treated this as relevant conduct and you're just defending that? Ultimately, yes. The grouping of the non-charged offense and then the offense of conviction. And then just on the special conditions of supervised release, you've agreed that number three should be struck after B, unless the sex offender treatment provider determines that access to adult pornography should be restricted, because there are no findings by the district court on adult pornography, right? You said condition number three? Three. Well, actually condition number three. 3B, unless the sex offender treatment provider determines that access to adult pornography should be restricted or denied. That's really a determination for the court to make right, not in the hands of the provider. Yeah, I think it's difficult. Here's the difficulty, Judge Williams, with that. I agree with what counsel stated, Mr. Sandberg, that there is no evidence of connection between adult pornography and this offense. I think the court realistically, in looking at this, knows that sex offender treatment providers will often take a sex offender and say, stay away from pornography because of a concern of developing healthy sexual relationships. So I think what the court is looking at in condition three is the fact that if your sex offender treatment provider ends up determining it's okay that you use adult pornography, then that's fine, but otherwise stay away from it. And I guess the court may have gotten ahead of itself knowing that many sex offender treatment providers say no pornography. Right, and the question is whether that should be a determination by the court, and the court should explain that. You've given a great explanation for it, but that wasn't laid down by the court, right? I think actually in the PSR, or the probation officer may have stated, I can't remember where, and I could supplement with a citation, that I think you may have stated in the pre-sentence report that it is often a sex offender treatment provider will ask or direct the patient to not possess, receive pornography, lawful adult pornography. So I assume that's your same argument on six, which basically talks about this is when it's dealing with the Internet. Because it's specifically there depicting child pornography, but it says, or other sexually explicit conduct unless a sex offender treatment provider directs otherwise. Yeah, and that one's written almost just the opposite. With respect to Judge Shadid, who's very conscientious, that I think he may have tripped over himself a little bit with wording, I don't know, but that is confusing because obviously a sex offender treatment provider cannot direct that any patient would have child pornography, for example, which that could, I guess, read absurdly, that could be an argument. I think they're very badly drafted. They say you should allow the U.S. Probation Office unannounced access to any computer you possess. Unannounced access? So what, probation officer appears at 3 a.m. or something, says, I want to look at your computer? Can that be? Your Honor, I apologize. What are you talking about? I don't have that complete. Well, it says special conditions of supervision. I assume this is what the judge imposed. No, I understand, Your Honor. What I'm apologizing for is because that wasn't one of the conditions raised that I, as I look through my notebook right now, I don't have. And the one that's, I think it's even more funny, is the last one. You shall not knowingly use the Internet, et cetera, et cetera, to view material depicting child pornography or sexually explicit conduct unless the sex offender treatment provider directs otherwise. What? He tells the defendant, I want you to watch child pornography? That's a comment I just made. I can't imagine if he wanted to watch it, teach you how horrible it is. I can understand that. Where does this stuff come from? So badly drafted. So bottom line is that that's a problem. And I guess my question is if, and I understand the probation officer says that sometimes the provider will say, hey, I don't want you to look at adult pornography either. We don't know what it's going to trigger, blah, blah, blah, blah, blah. The question is, though, if that is the case and that's the rationale, the district court should just say that at the time of sentencing. And then it would be fine if it's laid out in the conditions. For the district judge just to ban it? No, no, for the district court to say, and I'm imposing this condition because based on what the probation officer has said, and in the PSR, often people who have these huge issues also have issues with adult pornography. It can, as I understand what the probation officer is saying, trigger some of these other things. And so the condition I'm going to impose is that the provider be able to make that judgment. I mean, I think that would be okay because that would be the district court specifically authorizing that. Right, I understand, Your Honor. The record could be much better on that condition. I think the judge was trying to do the right thing by allowing the treatment provider to make that determination. I understand, giving the treatment provider some flexibility. But the question is, who's making the real call? And that's what we have to look at, you know, as a district court, delegating too much without making a specific finding. I understand, Your Honor. Okay. Well, thank you, Mr. Walters. Thank you, Your Honor. And Mr. Sandberg, do you have anything further? Nothing, unless the judge wants me to be able to add some questions. Okay. Pardon? I'm sorry. No questions. I don't have anything else to add in rebuttal unless anybody has questions for me. Okay. Well, thanks very much. And you were appointed, right? I was. So we thank you for your efforts. Thank you. And, of course, we thank Mr. Walters for his two efforts. So now we really are half way. Unless Judge Williams corrects me. So we'll be in recess.